IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES BOWLES,

       Plaintiff,

      v.                                                  Civ. No. 19-1135 SCY

ANDREW SAUL, Commissioner of Social
Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER[1]

Claimant James Bowles argues that the Administrative Law Judge ("ALJ") who denied

his claim for disability insurance benefits under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 401-434, committed several instances of error. Mr. Bowles's various arguments share

a common contention: the ALJ mischaracterized evidence and failed to consider relevant,

probative evidence. The Court agrees with this contention.[2] As a result, the Court GRANTS Mr.

Bowles's motion and remands this matter for further consideration consistent with this Opinion.

## BACKGROUND AND PROCEDURAL RECORD

Claimant James Bowles suffers from the following severe impairments: obesity, organic

sleep disorder, severe obstructive sleep apnea, hypersomnia, hypoxemia, ventricular systolic

dysfunction, diabetes mellitus with hyperglycemia, bronchial asthma, peripheral neuropathy,

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 3, 5, 6. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

[2] The Court's use of the word "mischaracterize" tracks published Tenth Circuit discussions and does not speak to the ALJ's intent or imply bad faith. It simply indicates, for whatever reason, that the ALJ did not accurately describe relevant portions of the record.

cardiomegaly, depressive disorder, adjustment disorder with mixed anxiety and depressed mood,

and an anxiety disorder. Administrative Record ("AR") at 35. Mr. Bowles has at least a high

school education and has past relevant work as an ambulance driver, kitchen helper, and grocery

store clerk. AR 43-44.

On January 12, 2017, Mr. Bowles filed his applications for benefits under Titles II and

XVI, alleging disability beginning September 15, 2015. AR 32. His applications were initially

denied on March 24, 2017, and on reconsideration on May 18, 2017. AR 188-89, 216-17. Mr.

Bowles requested a hearing on June 8, 2017. AR 32. ALJ Lillian Richter conducted a hearing in

Santa Fe on May 23, 2018. AR 32, 124. Mr. Bowles appeared with legal representation and

testified. AR 124. The ALJ also took testimony from Vocational Expert ("VE") David Couch.

AR 124, 450-54. On December 13, 2018, the ALJ issued an unfavorable decision. AR 32-45. On

October 8, 2019, the Appeals Council denied Mr. Bowles's request for review. AR 1-4. The

ALJ's decision is the final decision of Defendant Andrew Saul, Commissioner of the Social

Security Administration, for purposes of judicial review. On December 14, 2019, Mr. Bowles

filed a timely appeal with this Court. Doc. 1.

Mr. Bowles filed his Motion To Reverse Or Remand Administrative Agency Decision

And Memorandum In Support on April 27, 2020, Doc. 18. The Commissioner filed a response

on August 5, Doc. 22, and Mr. Bowles filed a reply on August 13, Doc. 23. The Social Security

Administrative Record was filed on February 3, 2020. Doc. 11. The Court reserves discussion of

the medical records relevant to this appeal for its analysis.

## **APPLICABLE LAW**

A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

(5)     If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more

4

than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Mr. Bowles argues that the Court should remand because: (1) the ALJ failed to properly evaluate the opinions of his treating physicians Drs. Como and Young, Doc. 18 at 22-25; (2) the ALJ failed to properly evaluate the opinion of his treating mental health counselor Mr. Kuzawa, *id.* at 25-27; (3) the ALJ failed to properly evaluate the opinion of non-examining consultant Dr.

Romig, *id.* at 27-28; and (4) the ALJ erred in evaluating the subjective symptom evidence, *id.* at 28-29. Because the Court agrees that the ALJ mischaracterized the treating physician and mental health counselor opinions, and failed to consider other relevant evidence in reaching her decision, the Court remands. The Court rejects the balance of Mr. Bowles's arguments.

## I.    Treating Physician Opinions

### A.    Legal standard

The ALJ is required to evaluate every medical opinion she receives that could have an effect on the RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017,[4] as the present claim is, medical opinions are classified into two different categories: "acceptable medical sources" and "other sources." "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298. "Other medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-03p, 2006 WL

---

[4] For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

2329939, at *2 (Aug. 9, 2006). Information from "other sources," both medical and non-medical, are used to "show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007); *see* SSR 06-03p, 2006 WL 2329939, at *2.

A unique two-step rule applies to the opinions of treating physicians (acceptable medical sources who provide or have provided the claimant with medical treatment and who have an ongoing relationship with the claimant). First, the ALJ must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* If it is not given controlling weight, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

The factors in the regulation are:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331; 20 C.F.R. §§ 404.1527(c), 416.927(c).

B.      Factual background

Plaintiff submitted medical source statements from treating physicians L. David Young,

D.O., and Jennifer S. Como, M.D., of Pecos Valley Medical Center. These physicians submitted

these statements in support of Plaintiff's claim for state disability retirement, using state

disability retirement forms.

Dr. Como provided a medical source statement on January 13, 2016. AR 1266-68. She

opined that Mr. Bowles can perform sedentary work. AR 1267. She stated that Mr. Bowles has

peripheral neuropathy from diabetes, severe LLE (lower leg extremity) cellulitis, and has been

hospitalized for 7 days; that he continues to experience numbness, swelling, tingling, and

decreased sensation of LLE; and that his edema requires rest and leg elevation and renders him

unable to stay on his feet for more than one hour at a time and requires him to elevate his leg

every two hours. AR 1266-68.

On January 25, 2017, Dr. Young filled out the same form. He opined that Mr. Bowles is

not capable of performing any work. AR 1261. He explained that the basis for his opinion is that

Mr. Bowles: is experiencing complications of severe Type II diabetes; has undergone multiple

hospital visits; has a worsening pulmonary condition and worsening peripheral neuropathy due to

diabetes; experiences numbness and decreased sensation of left lower leg that is worsening and

causing falls; is on a medication regime that relieves his pain, but not the edema and weakness or

numbness; has an edema requires rest with leg elevation frequently (every 2 hours); and is

unable to stay on his feet more than 1 hour. AR 1260-62.

On October 1, 2018, Dr. Young provided another statement, again opining that Mr.

Bowles is not capable of performing any work. AR 1255. Dr. Young opined that Mr. Bowles has

reached maximum medical improvement, and he will not likely be capable of returning to his

regular occupation. AR 1255-56. As support for this opinion, Dr. Young explained (again) that

Mr. Bowles: has diabetes and severe LLE cellulitis; has been hospitalized 7 days and experienced multiple hospital visits; has worsening pulmonary conditions and worsening peripheral neuropathy from diabetes; uses a cane to ambulate for unsteady gait; experiences numbness, swelling, and tingling of LLE and decreased sensation in left leg from uncontrolled diabetes; wears diabetic shoes and is on a CPAP for sleep apnea; is at risk for injury with mobility; has a leg edema that requires rest with leg elevation frequently; and needs to improve diet and exercise to manage diabetes. AR 1254-56.

The ALJ discussed these opinions but gave them "minimal weight." AR 41. The ALJ provided four reasons for this weight: (1) "[t]hese brief assessment[s] do not include detailed rationales for their opinions nor do they include vocationally specific lists of actual workplace limitations supported by objective medical evidence"; (2) "the standards for determining disability in state-based disability cases are completely different that the standards used in Social Security cases"; (3) "the opinions regarding the claimant's status as disabled or not disabled go to an issue reserved to the Commissioner and therefore cannot be given any special weight, particularly because these opinions are based on state disability standards and not Social Security standards"; and (4) "[t]he treatment notes described above greatly support the determination that the claimant is able to maintain sedentary work." *Id.*

In challenging the ALJ's evaluation of the opinions, Mr. Bowles raises both procedural and substantive arguments. The Court rejects his procedural arguments, but agrees with some of the substantive arguments.

C.    The ALJ did not err procedurally.

Mr. Bowles asserts that the ALJ did not engage in a proper treating physician analysis, neither explicitly considering whether to give the opinion controlling weight at the first step, nor applying the regulatory factors at the second step. Doc. 18 at 23-25. The Court rejects this

9

argument. The Tenth Circuit has been clear that an ALJ need not "expressly state whether he had given [a treating physician] opinion 'controlling weight.'" *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).[5] Here, as in *Mays*, the ALJ gave the opinion "minimal weight," AR 41, which means that she implicitly declined to give the opinion controlling weight. This procedure is not error. *Mays*, 739 F.3d at 575.

Similarly, the ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The Court finds the ALJ's discussion clear. She considered factor (2)—the kind of examination or testing performed—when she noted that the forms in question were state disability retirement forms. AR 41. She discussed factor (3)—the degree to which the physician's opinion is supported by relevant evidence—in stating that the assessments were brief, lacked detailed rationales or specific lists of workplace limitations supported by objective medical evidence. AR 41. The ALJ applied factor (4)—consistency between the opinion and the record as a whole—when she stated that the treatment notes in the record "greatly support the determination that the claimant is able to maintain sedentary work." AR 41. And finally, to the extent the ALJ gave other reasons, factor (6)—other factors—explicitly permits her to do so. The Court rejects Mr. Bowles's arguments of procedural error in the ALJ's discussion.

---

[5] The Commissioner cites only unpublished opinions in support of his argument on this point. Doc. 22 at 11. Mr. Bowles argues that the Court should therefore disregard the argument. Doc. 23 at 2. Although the Court may consider non-published cases for their persuasive value, it must follow published Tenth Circuit precedent, regardless of whether the Commissioner cites that precedent.

D.     <u>The ALJ mischaracterized the opinions and failed to consider relevant evidence.</u>

Mr. Bowles's argument, however, does not end there. He asserts substantive error in the ALJ's reasons, arguing that they are unsupported by the record, that the ALJ mischaracterized the record, and that she ignored relevant evidence. Doc. 18 at 23-24. As described above, the ALJ provided four reasons for assigning minimal weight to these treating source opinions. Mr. Bowles challenges each one in turn.

First, Mr. Bowles argues that "ALJ Richter's statement that the opinions were brief and lacking work-related limitations is not true." Doc. 18 at 23. "Both Drs. Como and Young supported their opinions with diagnoses, reported symptoms, clinical findings, treatment plans, functional limitations like the need for a cane and frequent leg elevation, and prognosis." *Id.* The Court agrees that the medical source statements in question are—especially by comparison to the average medical source statement—detailed with respect to the basis for the physicians' opinions. They discuss a variety of objective medical evidence: Mr. Bowles's diabetes; his multiple hospital visits; his pulmonary condition and peripheral neuropathy; the swelling, tingling, numbness and decreased sensation of his lower leg; his sleep apnea; and his medication regime. In addition, they do contain functional limitations: his inability to stay on his feet for more than one hour (whereas sedentary work requires standing and/or walking for up to two hours), his need for leg elevation every two hours, and his use of a cane. Mr. Bowles is therefore correct that the ALJ mischaracterized these opinions.

Second, Mr. Bowles challenges the ALJ's statement that New Mexico retirement disability and Social Security disability standards are "completely different." Doc. 18 at 24. The Court agrees that this is not, standing alone, a legitimate basis to discount a treating physician's opinion. Here, the treating physicians happened to give their opinions on a state disability retirement form; that does not somehow render the opinions irrelevant for purposes of Social

Security disability. The ALJ must evaluate *all* treating physician opinions in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). If the ALJ were otherwise correct to disregard the treating physician opinions, merely including this statement in her opinion would not necessarily be error. But as explained below, the ALJ was not otherwise correct in her assessment.

Third, Mr. Bowles argues that the ALJ cannot reject the opinions merely because opinions regarding the claimant's status as disabled or not disabled go to an issue reserved to the Commissioner and therefore cannot be given any special weight. Doc. 18 at 23. The Court agrees that if a treating physician combines relevant medical opinion with an opinion about whether a claimant can work (an issue reserved do the Commissioner), the relevant medical opinion should not be thrown out just because it comes with an opinion about whether the claimant can work. SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996) ("opinions from any medical source about issues reserved to the Commissioner must never be ignored").[6] But, conversely, an ALJ does not commit error simply because she points out that a medical opinion includes an assessment reserved for the Commissioner. In other words, if the ALJ's other reasons for rejecting the opinion of the treating physician were valid, the Court would affirm the ALJ despite her comment that the treating physicians opined on an issue reserved for the Commissioner. As will be explained below, however, the ALJ's other reasons for discounting the opinions are not valid.

Furthermore, if the ALJ meant that the sum total of the treating physicians' opinions amounts to only a bare statement that Mr. Bowles cannot work, that statement would constitute error because it would be a mischaracterization of the treating physicians' opinions. As described above, the opinions contain detailed rationales, a description of objective medical evidence, and

---

[6] This standard has been rescinded for claims filed after March 27, 2017. *See* SSR 96-2p, 2017 WL 3928298 (Mar. 27, 2017).

functional work-related limitations. The ALJ would have, therefore, been wrong to reject them simply because they *also* state that Mr. Bowles cannot work.

Finally, Mr. Bowles argues that the ALJ concluded that the record "greatly support[s] the determination that the claimant is able to maintain sedentary work," AR 41, only by selectively discussing the evidence supporting a finding of non-disability, while ignoring or trivializing the evidence supporting disability. Doc. 18 at 24. Mr. Bowles argues that the ALJ ignored "treating doctors' notes documenting regular medical appointments, severe symptoms of cellulitis, hyperglycemia, diabetic neuropathy, and other impairments, clinical findings like lower extremity pitting edema and diminished sensation, persistently abnormal foot exams, use of insulin and other medications, and repeat hospitalizations." *Id.* (citing AR 612, 976, 1006, 1098-99, 1815, 1822-25, 1053-76, 1287-88). Because the burden is on the claimant to point to probative evidence the ALJ ignored, *Mays v. Colvin*, 739 F.3d 569, 575-76 (10th Cir. 2014), the Court will only discuss the evidence Mr. Bowles specifically cites in his brief.

*Regular medical appointments, use of insulin and other medications*. The Court disagrees with Mr. Bowles on this point. The ALJ did not ignore that Mr. Bowles has a history of regular medical appointment and is on medications. AR 39-40.

*Severe symptoms of cellulitis*. The Court partially agrees with Mr. Bowles. To begin with, Mr. Bowles cites a medical record from November 5, 2015, stating that his cellulitis "is completely resolved." AR 1815. The ALJ was therefore correct to note that Mr. Bowles "sought care for a bout of cellulitis with 'mild' discomfort and burning, which was treated with medication, AR 40 (citing AR 1807-14), and that, in December 2015, Mr. Bowles "condition was 'improving again.'" AR 40 (citing 1811). Thus, there is no error with respect to the ALJ's discussion of the 2015 records. However, Mr. Bowles also cites a note from January 2017 that

"[h]e got sick with cellulitis"; that it was treated; and that it then recurred. AR 1006. The Court

agrees that the ALJ cannot find his cellulitis to have resolved in 2015 without discussing the fact

that it recurred in 2017.

*Hyperglycemia.* The Court disagrees with Mr. Bowles. The ALJ did acknowledge that

Mr. Bowles suffers from hyperglycemia as a result of his diabetes. AR 35. Mr. Bowles points out

that he was hospitalized in August 2018 for hyperglycemia, AR 94, and implies that the ALJ

should therefore have discussed it more thoroughly. However, Mr. Bowles did not submit this

evidence to the ALJ. He submitted it for the first time to the Appeals Council, who refused to

exhibit the evidence. AR 2. On appeal, Mr. Bowles does not argue that the Appeals Council

committed error. And the Court cannot tell exactly what other evidence Mr. Bowles claims the

ALJ overlooked with respect to his hyperglycemia.

*Diabetic neuropathy.* The Court disagrees with Mr. Bowles. The ALJ did acknowledge

that Mr. Bowles suffers from peripheral neuropathy as a result of his diabetes. AR 35. Again, the

Court cannot tell exactly what evidence Mr. Bowles claims the ALJ overlooked with respect to

his neuropathy, except as related to his foot and lower leg problems described immediately

below.

*Lower extremity pitting edema and diminished sensation, persistently abnormal foot

exams.* The Court does not agree that the ALJ failed to consider Mr. Bowles' foot and lower

extremity issues. To be sure, Mr. Bowles cites relevant evidence the ALJ did not discuss. *E.g.*,

AR 1822-25 (loss of sensation with fungal infection on bilateral toes; extremities with severe

onychomycosis, LLE swelling and tenderness with palpation, 2+ edema); AR 1815 (Extremities:

edema 1-2+ left lower extremity without erythema, left second finger with scab and ingrown

nail); AR 612 (Onychomycosis, severely uncontrolled at this time); AR 1006 (abnormal foot

exam). However, the ALJ assigned an RFC for sedentary work and provided for the use of a cane. AR 38. It is thus clear that the ALJ *considered* Mr. Bowles' foot and lower leg problems, even if she didn't *discuss* them. That is not error. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (while "[t]he record must demonstrate that the ALJ considered all of the evidence," she "is not required to discuss every piece of evidence").

*Repeat hospitalizations*. The Court agrees with Mr. Bowles. The ALJ failed to acknowledge that Mr. Bowles was repeatedly hospitalized throughout the longitudinal record. The ALJ instead said that in September 2015, Mr. Bowles was "no longer light-headed" and his "condition [was] greatly improved"; that in August 2016, his "blood pressure doing well" and his "blood sugars were controlled"; and that "[t]he most recent treatment notes [from 2018] described continued improvements of his condition." AR 40. Mr. Bowles points out that, during this period, he was hospitalized from May 26 to 27, 2017 for hypoglycemia. AR 1053-76. This contradicts the ALJ's finding of normal, controlled blood sugars throughout 2015 to 2018—and the ALJ did not discuss it. The Court finds the ALJ ignored relevant evidence in making her finding.

To conclude, the Court finds that the ALJ: (1) mischaracterized the physicians' opinions as brief, unsupported by objective medical evidence, and lacking functional limitations; and (2) ignored probative relevant evidence in concluding that Mr. Bowles's cellulitis resolved in 2015 and in concluding that Mr. Bowles' diabetes was controlled and improved after 2015 or 2016. This was error. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("in addition to discussing the evidence supporting h[er] decision, the ALJ also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects"); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a

clinical nurse specialist] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *see also Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a treating physician).

The Commissioner wisely does not attempt to defend the ALJ's conclusion that the physicians' opinions were "not supported by detailed rationales." Doc. 22 at 12. Nor does the Commissioner specifically address any of the evidence Mr. Bowles claims the ALJ failed to consider or discuss. Instead, the Commissioner says: "Assuming, arguendo, that Plaintiff is right, the ALJ still gave several other valid reasons for discounting the opinions of Dr. Como and Dr. Young. Any error, therefore, is harmless at worst and does not warrant remand." *Id.* As set forth above, the Court disagrees. All of the reasons the ALJ gave were infected with some degree of legal error (or, if they were not error, they cannot stand alone as a reason to reject treating physician opinions). Therefore, the Court reverses and remands for a proper analysis of the treating physician opinions.

## II.   Other Source Opinions

### A.   Mr. Kuzawa

Mr. Bowles argues that the ALJ failed to properly evaluate the opinions of Mr. Kuzawa, his treating clinical social worker. Doc. 18 at 25 (citing AR 1257-59, 1263-65, 1269-71). To the extent the ALJ's evaluation of Mr. Kuzawa's opinions included the same errors described above, the Court agrees and reverses for a proper evaluation of the opinions.

Mr. Kuzawa submitted three medical source statements.

On January 8, 2016, Mr. Kuzawa opined that Plaintiff was capable of sedentary work. AR 1269-71. Mr. Kuzawa explained that Mr. Bowles struggled with depression and anxiety intermittently for most of his adult life. AR 1269. Mr. Bowles could become emotionally

overwhelmed by interpersonal difficulties, especially in the work setting. *Id.* He exhibited low self-esteem, anxiety, and a depressed mood. *Id.* The diagnosis was unspecified mood disorder. *Id.* He was seen for individual therapy and medication management, although he was not taking medications at that time. AR 1270. He had "marked difficulty with interpersonal relationships resulting in recurring work related conflict." *Id.* He had emotional scars from prior work incidents where he felt humiliated and sexually harassed. *Id.* Mr. Kuzawa was uncertain whether Mr. Bowles would be able to return to work due to his psychiatric condition. *Id.* Mr. Bowles would have recurring work-related conflicts. AR 1271.

On January 24, 2017, Mr. Kuzawa opined that Mr. Bowles could not work due to markedly poor judgment regarding workplace social interactions. AR 1264. He did not know whether Mr. Bowles would be able to return to work as he could not assess his physical capabilities, the primary source of his disability. *Id.* Mr. Bowles was "overwhelmed emotionally by interpersonal issues" leading to depressive episodes and anxiety states. AR 1263. He had a number of such issues while he was working. AR 1263. Treatment focused on mood moderation and effective coping. AR 1264. Functional limitations included limited problem-solving skills and poor judgment regarding interpersonal interactions which has compromised his ability to maintain employment. AR 1265.

On January 11, 2018, Mr. Kuzawa opined that Mr. Bowles would be unable to return to his past job or any gainful employment. AR 1259. The basis for this opinion was substantially similar to the first two, although he now noted that Mr. Bowles was taking medications. AR 1258. Therapy was focused on improving self-esteem and decreasing anger. *Id.* Mr. Bowles "almost certainly" would continue to have recurring work-related conflicts compromising his ability to perform job tasks. AR 1259.

The ALJ evaluated these opinions in the same paragraph as she did the opinions of Drs. Como and Young, and therefore gave the exact same reasons for according Mr. Kuzawa's opinions minimal weight. AR 41. In other words, she said that Mr. Kuzawa's opinion was brief, unsupported by objective medical evidence, and lacking in functional limitations. AR 41. As the preceding description makes clear, that is incorrect. The Court therefore agrees with Mr. Bowles that the ALJ's discussion of Mr. Kuzawa's opinion was insufficient for the same reasons the ALJ's discussion of the opinions of Drs. Como and Young was insufficient.

In addition, Mr. Bowles makes distinct arguments that pertain to Mr. Kuzwa's opinion, independent of the problems with the evaluation of the opinions of Drs. Como and Young. The Court partially disagrees and partially agrees with these arguments.

First, Mr. Bowles argues that the ALJ "trivialized" his social-functioning limitations. *Id.* Mr. Bowles cites his own reports of significant problems getting along with co-workers and supervisors in his hearing testimony, written statements, and Mr. Kuzawa's therapy notes. Doc. 18 at 26-27. But, contrary to Mr. Bowles's argument, the ALJ did not ignore this evidence. AR 41 ("The claimant described family stressors and some difficulty with interpersonal skills."). The ALJ simply found this evidence outweighed by the other evidence that Mr. Bowles "did not describe severe cognitive or social dysfunction and he reported that he was able to independently maintain his activities of daily living." *Id.* The Court does not reweigh the evidence on appeal.

The ALJ also stated, however, that Mr. Bowles did not maintain a consistent mental health counseling therapy regimen. AR 41-42 (citing AR 1233). As Mr. Bowles points out, this is incorrect. Between his alleged onset date of September 15, 2015 and the ALJ decision on December 13, 2018, Mr. Bowles was seen for individual therapy 37 times, or approximately monthly. Doc. 18 at 27 (citing AR 26-27, 530, 1024-25, 1237). And the treatment record cited by

the ALJ does not support the ALJ's finding. To the contrary, the treatment note in question states on July 12, 2016 that "Client continues to be seen for individual therapy on a roughly once a month basis." AR 1233. The Court agrees with Mr. Bowles that the ALJ mischaracterized the record in this respect.

The Commissioner defends the ALJ by pointing out that the ALJ limited Mr. Bowles to "occasional interaction with supervisors and coworkers and no interaction with members of the public." AR 38; Doc. 22 at 14. While this is true, it does not demonstrate that any error in evaluating Mr. Kuzawa's opinion is harmless. To be harmless error, the RFC must match the functional limitations in the medical opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012). In this case, Mr. Kuzawa states that Mr. Bowles cannot work because he cannot get along with *anybody*. AR 1258-59. This does not match an RFC requiring Mr. Bowles to have occasional interaction with supervisors and coworkers.

The Court reverses and remands for a proper analysis of Mr. Kuzawa's opinion, especially his opinion regarding Mr. Bowles social-functioning limitations.

B.   Dr. Romig

Dr. Romig submitted annual disability assessments for 2016, 2017, and 2018. AR 1272, 1274-75. Dr. Romig based his opinions on the statements and medical records of Drs. Como and Young and Mr. Kuzawa. *Id.* The ALJ afforded Dr. Romig's opinion "minimal weight" in the same paragraph as, and for the same reasons given with respect to, the opinions of Drs. Como and Young. AR 41.

Mr. Bowles alleges this is error for the same reason the evaluation of the opinions of Drs. Como and Young was error. This is a closer call. Dr. Romig's opinions appear to be dictated narratives that simply summarize Drs. Young and Como's opinions. AR 1272, 1274-75. It is not clear what Dr. Romig's opinion adds to the record. Because the Court is remanding on other

bases, however, the Court will remand with instructions to the ALJ to evaluate Dr. Romig's

opinion without ignoring relevant medical evidence.

### III.     Subjective Symptom Evidence

A.     <u>Legal standard</u>

Social Security Ruling ("SSR") 16-3p[7] instructs ALJs "to consider all of the evidence in

an individual's record when they evaluate the intensity and persistence of symptoms after they

find that the individual has a medically determinable impairment(s) that could reasonably be

expected to produce those symptoms." 2017 WL 5180304, at *2. In evaluating whether a

claimant has disabling pain, the reviewing court considers whether the claimant has proffered

objective medical evidence of a pain-producing impairment; if so, whether there is a loose nexus

between the claimant's subjective allegations of pain and the impairment; and if so, whether the

claimant's pain is in fact disabling, considering both objective and subjective evidence.

*Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Luna v. Bowen*, 834 F.2d

161, 163-64 (10th Cir. 1987)). "A claimant's subjective allegation of pain is not sufficient in

itself to establish disability." *Id.*

The ALJs' assessments of subjective symptom complaints "warrant particular deference."

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). While the Tenth Circuit has "insisted on

objectively reasonable explanation over mere intuition," it has "not reduced [subjective

symptom] evaluations to formulaic expressions." *Id.* at 909. The courts do not "'require a

---

[7] SSR 16-3p is applicable for decisions made on or after March 28, 2016, and superseded SSR
96-7p. *See* 2017 WL 5180304, at *13 n.27. SSR 16-3p eliminated the use of the term
"credibility," in order to clarify that subjective symptom evaluation is not an examination of [a
claimant's] character." *Id.* at *2. The instructions for evaluating subjective allegations in both
rulings are the same, so case law interpreting SSR 96-7p remains relevant. *See Paulek v. Colvin*,
662 F. App'x 588, 593-94 (10th Cir. 2016); *Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46
(10th Cir. 2017).

formalistic factor-by-factor recitation of the evidence.'" *Id.* (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The ALJ need only "set[] forth the specific evidence [s]he relies on in evaluating the claimant's" subjective symptom evidence. *Id.* "Findings as to [subjective symptom evidence] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

      B.    <u>Analysis</u>

Mr. Bowles argues that the ALJ erred with respect to her subjective-symptom-evidence determination for almost the exact same reasons as those discussed with respect to the treating physician analysis: the ALJ disregarded or trivialized objective medical evidence. Doc. 18 at 28. The Court agrees for the same reasons explained above. Also as set forth above, the Court disagrees that the ALJ ignored relevant evidence related to Mr. Bowles's mental functioning, but agrees that the ALJ should not have relied on Mr. Bowles's alleged failure to consistently attend mental health counseling. The Court does not determine whether this alone would be reversible error, in light of the Court's decision to remand on other grounds.

Mr. Bowles also challenges the ALJ's reliance on his activities of daily living, including driving, shopping, helping put together a music CD, caring for his elderly mother, and occasionally going to church and social events like dances. *Id.* at 29. Mr. Bowles emphasizes his testimony that he was severely limited in these activities due to easy fatigability, breathing problems, poor sleep, poor comprehension, interpersonal conflict, and difficulties handling stress and change. *E.g.*, AR 482-88. For instance, the ALJ noted that Mr. Bowles went dancing, AR 1317, 1326, but ignored Mr. Bowles's testimony that he went infrequently and danced only one dance because he got tired, AR 165-66.

This is not error. When it comes to assessing subjective symptom evidence, weighing conflicting reports is precisely the task of the ALJ. The ALJ considered Mr. Bowles's hearing testimony, AR 39, but concluded that his statements in various medical records were entitled to more weight than that testimony. The Court does not review this conclusion on appeal.

## **CONCLUSION**

For the reasons stated above, Mr. Bowles's Motion To Reverse Or Remand Administrative Agency Decision And Memorandum In Support, Doc. 18, is **GRANTED**.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**